Rickey L. STEPHENSON,
Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 84–3017.

United States Court of Appeals,
Seventh Circuit.

Argued May 30, 1985.

Decided Aug. 30, 1985.

Edward Grutzner, Grutzner Byron Holland & Vollmer, Beloit, Wis., for plaintiff-appellant.

James C. Ratzel, Asst. U.S. Atty., Madison, Wis., for defendant-appellee.

Before WOOD and POSNER, Circuit Judges, and WEIGEL, Senior District Judge.[*]

WEIGEL, Senior District Judge.

Plaintiff-appellant Rickey Stephenson brought this action against defendant-appellee United States of America (the "government"), to recover for injuries sustained when he was struck by a government vehicle driven by a government employee. The district court determined that the employee was not acting within the scope of his employment at the time of the accident, and dismissed the action.

## I.

Sergeant Anthony Green ("Green") was employed as a recruiter by the United States Marine Corps at its Beloit, Wisconsin office. Each working day, he drove a government vehicle from the Marine Corps' Janesville, Wisconsin recruiting substation to Beloit. There he used the vehicle for government work. Each evening, he was required to return the vehicle to the Janesville substation which was near his home.

On August 9, 1982, Green drove a government vehicle from the Janesville substation to his government office in Beloit. There, he met with Pauline Lawson ("Lawson"), a high school counselor, to discuss recruitment plans. She invited Green to make a social call at her home that evening.

At about 5:00 p.m., Green left the Beloit office and walked to a nearby bar, where he drank three or four beers. Military regulations forbade him from consuming alcohol while on duty. They also forbade consuming alcohol within 8 hours prior to operating a government vehicle and using the vehicle for personal business. Upon returning to the office, he got into a fight with another serviceman. He left the Beloit office in the government car, and arrived at Lawson's residence at about 6:00

p.m. His trip took him off the route he normally used to return to Janesville.

At Lawson's, Green consumed another beer and discussed personal matters.[1] He left Lawson's at about 9:30 p.m., and began his return trip to Janesville. While en route, his vehicle collided with applicant. At the time of the accident, Green's blood alcohol content exceeded the level permitted by Wisconsin law.

Appellant sued the government to recover for injuries sustained in his collision with Green. Pursuant to the district court's order that they stipulate to all uncontested facts, the parties agreed that Green was traveling on his customary route back to Janesville when the accident occurred, and that he had intended to return the government vehicle to the recruiting substation. The district court determined that Green was not acting within the scope of his employment at the time of the accident, and that the government was therefore not liable for injuries he may have caused.

## II.

Under Wisconsin law, an employer is liable for injuries caused by the negligent acts of its employee if the employee was acting " 'within the scope of his employment' at the point in time and place involved in plaintiff's claim." *Finsland v. Phillips Petroleum Co.*, 57 Wis.2d 267, 272, 204 N.W.2d 1, 3–4 (1973). An employee's acts fall within the scope of his employment where (1) the act was part of or reasonably incidental to the duties he was hired, directed, or expected to perform, and (2) the act was intended to benefit the employer. *Hibma v. Odegaard*, 576 F.Supp. 1549, 1553 (W.D.Wis.1984).

The record shows that Green deviated from his employer's business in going to the bar, consuming alcoholic beverages, fighting, and driving to Lawson's for a personal visit. However, appellant contends that Green was acting within the

---

[*] The Honorable Stanley A. Weigel, Senior District Judge of the Northern District of California, is sitting by designation.

[1.] Although Lawson invited Green to her home for a personal visit, they did spend some time discussing recruiting activities. However, our decision does not rest upon any conclusion that Green's visit was within the scope of his employment.

scope of his employment *at the time of the accident* because, in returning the government vehicle to Janesville, he was doing an act that he was directed to perform and that was intended to benefit the government. Appellant emphasizes that Green was required to return the vehicle to the Janesville substation that evening, and that the government benefited from the vehicle's return in several ways.[2]

■ The district court rejected the notion that Green, having deviated from his employer's business, could resume the master-servant relationship by driving the government car back to Janesville. The court found that Green was not acting for the government's benefit at the time of the accident because it was not clear he was returning the car to the Janesville substation, but that it was "just as probable that he was going to take the car home."[3] However, the parties had previously stipulated that Green intended to return the car to the Janesville substation at the time of the accident. The court stated that it was "adopting the facts stipulated to by the parties." The district court erred in disregarding one of the stipulated facts without explanation. *See Brown v. Tennessee Gas & Pipeline Co.*, 623 F.2d 450, 454 (6th Cir.1980) (stipulations and admissions generally binding on the parties and the court); *Fenix v. Finch*, 436 F.2d 831, 837 (8th Cir.1971) (same).[4]

Appellee argues that any error by the district court regarding Green's intended destination was harmless because the court

had already determined that Green had removed himself altogether from conduct as a marine recruiter. Appellee contends, and the district court apparently concluded, that Green's deviation from his employer's business was so substantial as to preclude him from resuming the master-servant relationship later that evening.

■ Wisconsin courts have emphasized that it is the employee's conduct *at the time of the accident* that determines whether he is acting within the scope of his employment. *See Finsland*, 57 Wis.2d at 272, 204 N.W.2d at 3–4; *Barragar v. Industrial Commission*, 205 Wis. 550, 554, 238 N.W. 368, 370 (1931). While Green may have deviated from the scope of his employment earlier in the evening, he was, *at the time of the accident*, performing an act that he was directed to do and that was intended to benefit the government. Appellee cites no authority for the proposition that an employee's deviation from his employer's business may be so substantial as to preclude the employee from resuming the master-servant relationship.

■ The district court also found that Green was not acting within the scope of his employment because he "certainly wasn't serving his employer's purpose by driving the car while [intoxicated]," and because "[h]e had to go back to Janesville at some time anyway." However, the fact that Green was intoxicated when driving does not mean that he was acting outside the scope of his employment, but only that he failed to use reasonable care under the

**2.** There was evidence at trial that the vehicle used by the Marine Corps recruiter had been vandalized when stored in Beloit. Appellant maintains that the government therefore benefited from the vehicle's return to Janesville. Appellant also cites "other less obvious benefits" to the government from having the vehicle returned, including the monitoring of both its personnel and its vehicles.

**3.** Green apparently told his superior officer that he was heading "home" at the time of the accident. The district court relied on this evidence in making its finding. After the court announced its findings, appellant's counsel pointed to Green's testimony that, in telling the officer he was going "home", he had meant he was going back to the Janesville substation and then

going to his home. The court apparently rejected this testimony. Counsel did not direct the court's attention to the parties' stipulation that Green intended to return the car to the Janesville substation.

**4.** In this case, the district court's factual determinations were "primarily a matter of drawing inferences from undisputed facts or determining their legal implications." *Yorke v. Iseri Produce Co.*, 418 F.2d 811, 814 (7th Cir.1969). In such cases, the appellate court may reverse the district court upon a "definite and firm conviction that a mistake has been made." *Hylin v. United States*, 715 F.2d 1206, 1215 (7th Cir. 1983), *vacated on other grounds*, — U.S. —, 105 S.Ct. 65, 83 L.Ed.2d 16 (1984).

circumstances. It does not matter that military regulations forbade Green from driving after consuming alcohol. The government cannot insulate itself from liability for the negligent acts of its employees by promulgating regulations prohibiting employees from drinking and driving. *Cf. Smith v. Yellow Cab Co.;* 173 Wis. 33, 35, 180 N.W. 125, 126 (1920).

Similarly, the fact that Green had to return to Janesville because he lived there does not mean that he was acting outside the scope of his employment. Green was *required* to return the government car to the Janesville substation and *prohibited* from using it for personal business. An employer's control over its employee's travel "has long been the touchstone in determining whether [the employee] was acting within the scope of his employment." *Kamp v. Curtis,* 46 Wis.2d 423, 430, 175 N.W.2d 267, 271 (1970). Because the government had the "right to control the details of [his] trip," Green was clearly acting within the scope of his employment in returning the government car to Janesville. *Id.*

The judgment of the district court is reversed and the case remanded to the district court for further proceedings consistent with this opinion.