**Barbara I. MOREY, ETC.,**
**Plaintiff, Appellant,**

v.

**UNITED STATES of America,**
**Defendant, Appellee.**

No. 89–2186.

United States Court of Appeals,
First Circuit.

Heard May 11, 1990.
Decided May 29, 1990.

Philip J. Crowe, Jr., with whom Elizabeth N. Mulvey and Lubin & Meyer, P.C., Boston, Mass., were on brief for plaintiff, appellant.

Ann Southworth, Appellate Staff, Civ. Div., Dept. of Justice, with whom Stuart M. Gerson, Asst. Atty. Gen., Washington, D.C., Wayne A. Budd, U.S. Atty., Boston, Mass., and Barbara C. Biddle, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D.C., were on brief for the U.S.

Before BREYER, Chief Judge, ROSENN,* Senior Circuit Judge, and CAMPBELL, Circuit Judge.

LEVIN H. CAMPBELL, Circuit Judge.

Barbara Morey brought this action under the Federal Tort Claims Act in the United States District Court for the District of Massachusetts. Morey seeks to recover for the wrongful death of her son, Kevin Campbell, who was enlisted in the United States Navy at the time of his death, and whose death was allegedly caused by the Navy's negligence. The district court dismissed the claim, ruling that it was barred because the death arose out of activity "incident to military service." Morey appeals. We affirm.

Kevin Campbell enlisted in the Navy on August 27, 1984. At that time, he was found to be in good health and free from alcohol or drug involvement. However, in 1985, the military found him guilty of drunkenness on more than one occasion. In July 1985, a military physician diagnosed him as an alcohol abuser requiring rehabilitation. In October, 1985, a Navy Drug and Alcohol Program Adviser recommended Campbell for the Navy Alcohol and Drug Safety Action Program. The ship to which Campbell was assigned was in port from August, 1985 until Campbell's death on May 12, 1986. During that time, Campbell's superiors were allegedly aware that he was long overdue for rehabilitation. However, Campbell was never placed in the recommended alcohol rehabilitation program.

On the night of Campbell's death, he had left his ship to visit friends in town. Prior to returning to his ship, Campbell apparently consumed a large quantity of alcohol. When he returned to the pier where his ship was docked, he fell off the pier and drowned.

On August 5, 1988, Morey, acting as the Administratrix of Campbell's estate, sued the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680. Morey alleges that Campbell's death was caused by the Navy's negligence and recklessness in the "design, supervision, maintenance, care and control of its programs and facilities." Morey contends that the Navy failed to comply with its own Alcohol and Drug Safety Action Program regulations and negligently failed to enroll Campbell in a rehabilitation program. In addition, she argues that Campbell's death was caused by the Navy's negligent failure to provide adequate patrols and security around the pier. Morey seeks five million dollars in damages.

The district court dismissed the suit, ruling that it was barred under *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), which held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to [military] service." *Id.* at 146, 71 S.Ct. at 159.[1]

■ We find no error in the district court's determination that Morey's claim is barred under *Feres*. Contrary to Morey's arguments on appeal, Campbell's death clearly arose out of activities incident to military service. First, Campbell's act of

---

* Of the Third Circuit, sitting by designation.

1. The fact that the suit was brought by the administratrix of the serviceman's estate rather than the serviceman is not relevant for purposes of the *Feres* doctrine. *See United States v. Shearer*, 473 U.S. 52, 58 n. 3, 105 S.Ct. 3039, 3043 n. 3, 87 L.Ed.2d 38 (1985).

returning to his ship was an activity incident to military service, despite the fact that he was returning from non-military activity. *See Camassar v. United States*, 531 F.2d 1149, 1151 (2d Cir.1976) ("[D]ecedent's presence on [the pier where his death occurred] was not fortuitous but was directly related to the fact that he was serving in the Navy on a vessel docked at that pier. As a general rule an injury to a member of the armed forces, on active duty, which occurs at a military base or installation ... is an injury 'arising out of or in the course of activity incident to military service.' ") (footnote omitted); *Potts v. United States*, 723 F.2d 20, 21 (6th Cir. 1983) (injury occurring as serviceman was returning to naval landing craft arose out of activity incident to military service, irrespective of whether his business ashore was related to military service), *cert. denied*, 466 U.S. 959, 104 S.Ct. 2172, 80 L.Ed.2d 555 (1984).

Moreover, all of the acts or omissions complained of involved activity incident to military service. The claim that the Navy failed to place Campbell in a rehabilitation program plainly arises out of activity incident to military service, because Campbell was only eligible for this program by virtue of his military status. *See, e.g., Rayner v. United States*, 760 F.2d 1217, 1219 (11th Cir.) ("The provision of benefits to soldiers because of their status as military personnel is considered 'activity incident to such service.' "), *cert. denied*, 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985); *Sidley v. United States Department of Navy*, 861 F.2d 988, 990 (6th Cir.1988) (serviceman's treatment at Naval hospital by Navy doctors was incident to his military service, even though injury occurred off base, while

serviceman was off duty). *See also Hamilton v. United States*, 719 F.2d 1 (1st Cir.1983) (malpractice action for misdiagnosis of serviceman's skin cancer was barred under *Feres* ). Similarly, the claim that the Navy provided inadequate security for the pier concerns acts or omissions by Navy officials in their handling of military resources and personnel.

Morey argues that *Feres* should not apply here, because the adjudication of Morey's claim will not require the district court to inquire into military decision making. The Supreme Court has said, "the situs of the [injury] is not nearly as important as whether the suit requires the civilian court to second guess military decisions and whether the suit might impair essential military discipline." *United States v. Shearer*, 473 U.S. 52, 57, 105 S.Ct. 3039, 3042, 87 L.Ed.2d 38 (1985) (citations omitted). Adjudicating Morey's claims would, however, require the court to delve into questions of military decision making. The claim that the Navy negligently or recklessly failed to place Campbell in the alcohol rehabilitation program implicates such questions of military decision making as the circumstances under which a serviceman should have been given alcohol rehabilitation; which servicemen's problems are so serious as to require priority over others; and how the rehabilitation program should be managed and supervised.[2] Morey's other contention, that the Navy was negligent or reckless in failing to provide sufficient security around the pier, likewise implicates questions of military decision making, such as the proper allocation of security forces and the proper supervision of such forces.[3]

In a final effort to avoid application of *Feres*, Morey requests that "this court

---

**2.** The investigative report relied on by Morey states that one Navy official gave as his explanation for not sending Campbell to rehabilitation that "His personal behavior and professional performance were of such quality that I did not pursue further alcohol treatment for him ... other personnel required immediate treatment, so priority to send Seaman Campbell deminished (sic)."

**3.** Morey argues that adjudication of her claims will not require any second-guessing of military decision making, because the Navy has admitted

"through its own internal investigation" that Campbell's death was caused by Navy neglect. However, the government's answer to the complaint indicates that it has not conceded negligence or causation. On the contrary, it clearly disputes these allegations. Even assuming that the internal investigation supports Morey's allegations and that it would be admissible in a trial, that report is not *binding* on the government and would in no way preclude it from contesting liability.

overrule the arcane and inequitable *Feres* doctrine." We recognize that some of the circuits and several of the justices have criticized *Feres.* *See, e.g., Hinkie v. United States,* 715 F.2d 96, 97 (3rd Cir.1983) ("We are forced once again to decide a case where 'we sense the injustice ... of the result' but where nevertheless we have no legal authority, as an intermediate appellate court, to decide the case differently."), *cert. denied,* 465 U.S. 1023, 104 S.Ct. 1276, 79 L.Ed.2d 680 (1984); *Scales v. United States,* 685 F.2d 970, 974 (5th Cir.1982) ("we are compelled, however reluctantly, to ... dismiss the claim as barred by *Feres* "), *cert. denied,* 460 U.S. 1082, 103 S.Ct. 1772, 76 L.Ed.2d 344 (1983). *See also United States v. Johnson,* 481 U.S. 681, 700, 703, 107 S.Ct. 2063, 2074, 2075, 95 L.Ed.2d 648 (1987) (Scalia, J., joined by Brennan, Marshall, and Stevens, JJ., dissenting) ("*Feres* was wrongly decided and heartily deserves the 'widespread, almost universal criticism' it has received."; "I would not extend *Feres* any further.... [but would] limit our clearly wrong decision in *Feres* and confine the unfairness and irrationality that decision has bred."). There are, however, substantial countervailing considerations, including the provision in the military of certain alternative forms of compensation, and the effect of the potential costs and disruption upon the nation's ability to maintain a defense establishment. In any event, the issue of whether to overrule *Feres* is clearly for Congress or the Supreme Court, not this court. We may not overrule the latter even were we disposed to do so.

*The judgment of the district court is affirmed.*