**Dwight D. HOLLOWAY, as Personal Representative of the Estate of Arlan Dean Stucky, deceased, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. 92–0712–CIV–ORL–18.

United States District Court,
M.D. Florida,
Orlando Division.

Sept. 9, 1993.

Fred M. Peed, Peed & Clark, P.A., Marcia K. Lippincott, Marcia K. Lippincott, P.A., Orlando, FL, for plaintiff.

James R. Hilbert, Jr., U.S. Atty.'s Office, Tampa, FL, for defendant.

## ORDER

G. KENDALL SHARP, District Judge.

Dwight D. Holloway (Holloway), as the personal representative of the Estate of Arlan Dean Stucky (Stucky), brings this action under the Federal Tort Claims Act (FTCA), ch. 753, tit. IV, 60 Stat. 842 (1946) (current version in scattered sections of 28 U.S.C. (1988)). This lawsuit was tried without a jury. The issue is whether Frank Barnhart (Barnhart), a United States Naval Reserve officer, was acting within the line of duty when he caused an automobile collision, which resulted in Stucky's death. The court concludes that Barnhart was not acting within the line of duty at the time of the collision, and thus, the United States is not liable for Stucky's death. In accordance with Federal Rule of Civil Procedure 52(a), the court enters this order.

### I. Findings of Fact

At all times relevant to this action, Barnhart was a member of the United States Naval Reserve (Naval Reserve). Barnhart's regular weekend duty training site was in Jacksonville, Florida. On August 16, 1990, the Naval Reserve and Readiness Command issued orders for Barnhart to perform two days of inactive duty training in Charleston, South Carolina. The orders provided for travel costs from Barnhart's home in Monte Verde, Florida to Charleston and return; per diem for two travel days; and military pay for two duty days. The orders directed Barnhart to report for duty no later than 7:30 a.m. on September 8, 1990.

On September 7, 1990, Barnhart drove his privately-owned vehicle from Monte Verde to Charleston. On September 8 and 9, 1990, Barnhart engaged in reserve activity at the Charleston Naval Station. At 4:30 p.m. on September 9, Barnhart's commanding officer dismissed Barnhart's training unit. When Barnhart left the Charleston Naval Base, he had submitted his paperwork to the finance office for payment, checked out of his room, and changed into his civilian clothes. The Naval Reserve did not direct which route Barnhart should follow home or require Barnhart to return home.

Barnhart left Charleston in his privately-owned vehicle with two six-packs of beer. Barnhart made seven rest stops on his trip home, drinking eight of the twelve beers at some of the stops. None of Barnhart's stops were related to his military duty. When Barnhart was approximately five miles from his home, he drove his vehicle over the yellow line and caused a head-on collision with Stucky's vehicle. The collision caused Stucky's death.

### II. Conclusions of Law

■ Pursuant to the FTCA, the United States is liable for Barnhart's tortious conduct if Barnhart was acting within the scope of his employment, as defined by Florida law. *See* 28 U.S.C. § 1346 (providing, in pertinent part, that district courts have exclusive jurisdiction of tort claims against the United States for damages caused by the wrongful acts of government employees acting within the scope of their employment, if a private person would be liable under the circumstances and in accordance with the law of the place where the employee commits the act); § 2674 (providing that the United States shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances); *Williams v. United States*, 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). To hold the United States liable under Florida respondeat superior law, Holloway must show that Barnhart's actions (1) were of the kind that the Naval Reserve employed him to perform, (2) occurred substantially within the time and space limits of his employment, and (3) were activated at least in part by a purpose to serve the Naval Reserve. *See Nadler v. Mann*, 951 F.2d 301, 305 (11th Cir.1992).

■ Because this action involves the tortious conduct of an employee of the naval forces, the court considers special factors characteristic of military activity, as well as traditional notions of scope of employment.

*See Hinson v. United States,* 257 F.2d 178, 181 (5th Cir.1958) (interpreting 28 U.S.C. § 2671, which provides, in pertinent part, that "acting within the scope of . . . employment" in the case of a member of the naval forces means acting within the line of duty). At the time of the collision, Barnhart was in travel status under the Joint Federal Travel Regulations. Although travel status entitled Barnhart to travel allowances, the Navy defines employment in inactive duty for training as normally including only that period between muster and dismissal. Holloway argues that "normally" suggests that exceptions to the rule exist. Yet, the court finds no evidence that the circumstances of this case fall within an exception. Furthermore, the Uniform Code of Military Justice governs members of the Naval Reserve only while on inactive duty training. Thus, when Barnhart's commander dismissed him from inactive duty at the Charleston Naval Station, Barnhart was no longer employed in inactive duty or subject to the Uniform Code of Military Justice.

■ Holloway contends that because the United States agreed to compensate Barnhart for his travel expenses and the collision occurred while Barnhart was on a direct route home, Barnhart was acting within the scope of his employment at the time of the collision. Holloway acknowledges that Florida courts generally hold that an employee merely going to or coming from work in his own car is not in the course of employment. *Foremost Dairies, Inc. v. Godwin,* 158 Fla. 245, 26 So.2d 773, 774 (1946); *Freeman v. Manpower, Inc.,* 453 So.2d 208, 209 (Fla.Dist. Ct.App.1984). Nevertheless, Holloway maintains that because the Naval Reserve paid for Barnhart's transportation, Barnhart's actions fall within an exception to the "going and coming" rule. Holloway relies on workmen's compensation cases, in which courts have held that when parties to an employment contract agree that the employer will furnish transportation to the employee, the employee comes into the employer's control when the transportation begins. *Swartzer v. Food Fair Stores, Inc.,* 175 So.2d 36, 38 (Fla.1965) (citing authority that because the parties contracted for transportation, the parties enter into the work day when the

mutual duties of the employer and employee are being performed); *see also Freeman,* 453 So.2d at 208 (recognizing that worker's compensation cases deciding scope of employment are instructive in determining the limits of respondeat superior); *Thurston v. Morrison,* 141 So.2d 291, 294 (Fla.Dist.Ct. App.1962) (same).

■ Although workmen's compensation cases are instructive, Florida courts have repeatedly held that workmen's compensation law subjects employers to a broader scope of liability than the doctrine of respondeat superior. *Sussman v. Florida East Coast Properties, Inc.,* 557 So.2d 74, 75 (Fla. Dist.Ct.App.1990) (citing *Winn Dixie Stores, Inc. v. Akin,* 533 So.2d 829, 831–32 (Fla.Dist. Ct.App.1988) (Anstead, J., concurring specially), for the proposition that respondeat superior requires a narrower interpretation than workmen's compensation because the policy goal of workmen's compensation is prompt and limited benefits without regard to fault); *Johnson v. Gulf Life Ins. Co.,* 429 So.2d 744, 747 (Fla.Dist.Ct.App.1983). The court further notes that Barnhart was not travelling between posts while on active duty. *Cf. Stephenson v. United States,* 771 F.2d 1105, 1108 (7th Cir.1985) (finding that because an active-duty Marine recruiter's duties included driving a government vehicle to and from the recruiter's post, the recruiter was acting within the scope of his employment when he was on his customary route between stations). Thus, taking into consideration the Navy's definition of inactive duty, the court concludes that to create an exception to the going and coming rule, based on the Naval Reserve's agreement to compensate Barnhart for travel, would exceed the scope of respondeat superior liability. *See James v. United States,* 467 F.2d 832, 834 (4th Cir.1972) (applying North Carolina law and holding that an officer on a direct route home to inactive status in his privately-owned vehicle is not within the scope of employment because the government did not control the officer's mode of transportation); *cf. Ashworth v. United States,* 772 F.Supp. 1268, 1271–72 (S.D.Fla.1991) (finding that no expansive interpretation of the scope of respondeat superior liability was required to hold the United States liable for a Coast

**1330**

Guard seaman's actions while conducting a do-it-yourself move between duty stations). Accordingly, the court finds that Barnhart was acting outside the scope of his employment when he was driving home.

### III. Conclusion

The FTCA limits the United States' liability for its employees' conduct to actions taken within the scope of employment. The court finds that Barnhart's travel was outside the scope of his employment in inactive duty for training. Accordingly, the court concludes that the United States is not liable for Stucky's death, and thus, finds in favor of the United States.

It is SO ORDERED.