**Andrew DAY**

v.

**MASSACHUSETTS AIR NATIONAL GUARD, et al.**

**No. Civ.A. 96–30126–MAP.**

United States District Court, D. Massachusetts.

Feb. 12, 1998.

Mark D. Mason, Daniel E. Bruso, Cooley, Shrair, P.C., Springfield, MA, for Andrew Day.

Cynthia J. Gagne, H. Gregory Williams, Springfield, MA, for Massachusetts Air Nat. Guard.

Karen L. Goodwin, U.S. Attys. Office, Springfield, MA, for Richard Duquette and U.S. Dept. of the Air Force.

John A. Odierna, Odierna & Beaumier, Springfield, MA, for James Towle.

*MEMORANDUM REGARDING DEFEN-
DANTS' MOTIONS TO DISMISS;
PLAINTIFF'S MOTION FOR RE-
LIEF AND DEFENDANT TOWLE'S
MOTION TO ORDER REVIEW*

(Docket Nos. 14, 23-1, 23-2, 27, 31 & 50)

PONSOR, District Judge.

## I. INTRODUCTION

The plaintiff, Andrew Day ("Day"), has brought this sixteen-count complaint against the Massachusetts Air National Guard ("MANG"), the United States Air Force ("USAF"), James Duclos ("Duclos"), Richard Duquette ("Duquette"), James Towle ("Towle") Duane Caton ("Caton"), James Balisle ("Balisle") and eight unnamed individuals ("Does 1–8"), in their individual and official capacities as members of the USAF. The complaint arises from an attack suffered by Day in the early morning of July 22, 1994, while he was serving with the 104th Fighter Group at Volk Field in Wisconsin.

Based on the attack, and the events that followed, Day asserts civil rights claims pursuant to Mass.Gen. Laws ch. 12, § 11I and 42 U.S.C. § 1983. His complaint also includes counts for assault and battery, intentional and negligent infliction of emotional distress, negligent supervision, and negligent enlistment and commissioning against the defendants individually and against the USAF and the MANG.

On November 22, 1996, this court substituted the United States as the defendant on the state law claims against Balisle, Duclos and Duquette, following certification that these defendants were acting within the scope of their employment, pursuant to 28 U.S.C. § 2679(d)(1) (1994). For the reasons set forth below, the court declined to substitute the United States for Towle.[1]

Pursuant to Fed.R.Civ.P. 12(b)(1) and (6), the defendants have moved to dismiss all claims for lack of subject matter jurisdiction. Towle also asks the court to reconsider its decision not to substitute the United States for him. The plaintiff opposes the defendants' Motions to Dismiss and, in addition, asks the court to reconsider its decision to substitute the United States for Balisle, Duclos and Duquette on the state law claims.

For the reasons set forth in detail below, the court will DENY Towle's motion to substitute the United States for him, DENY the plaintiff's motion for relief from the court's Order substituting the United States for Balisle, Duclos and Duquette, ALLOW the Motions to Dismiss of the MANG, USAF, Towle, and Duquette, and dismiss the complaint against Caton and the "John Doe" defendants, *sua sponte.*

In summary, the plaintiff's claims against the USAF, MANG and the individual defendants are barred by the *Feres* doctrine which precludes government and individual liability for injuries arising "incident to military service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

## II. FACTS

In considering the defendants' Motions to Dismiss, the court must view the facts, and all reasonable inferences flowing from them, in the light most favorable to the plaintiff. *Mulloy v. United States,* 884 F.Supp. 622, 626 (D.Mass.1995).

At the time of the alleged incident Day was an enlisted airman in the MANG, a Senior Airman/E–4, assigned to the Aerospace Ground Equipment ("AGE") section of the 104th Fighter Group ("104th"), a unit of the MANG.

In July 1994, Balisle, a non-commissioned officer and enlisted member of the MANG 104th, temporarily assigned Day to the Munitions and Weapons Section of the 104th. Day alleges that when Balisle made this temporary assignment, he stated that the Munitions and Weapons Section would "rape" Day.

During July 1994, the 104th, including Day, performed an Operation Readiness Inspection ("ORI") at Volk Field in Wisconsin. Throughout the ORI, Day observed other members of the 104th being subjected to hazing. In one incident, Day observed airmen rip the clothing off another member of the 104th, fasten the naked victim to a bed with duct tape and place him outside for public ridicule. The officers and non-commissioned officers in charge of his section, including Duclos, failed or neglected to stop this attack. Additionally, throughout the ORI, other members of the 104th, including Duquette and Towle, threatened that Day would be the next hazing victim.

On July 21, 1994, Day was released from duty and attended a party at the Volk Field Base Club with other members of the 104th. Day left the party at 1:00 a.m. on July 22, 1994, and returned to his assigned barracks to sleep. Prior to falling asleep, Duquette allegedly warned Day that he would be attacked.

---

1. No substitution or other formal action has been proposed to, or taken by, the court in relation to Caton, who, despite being granted an extension, has never answered the complaint, or in relation to the "John Doe" defendants, who have never been named. Because all these titular defendants stand on the same footing as the others legally, the court will be dismissing the complaint against them as well, *sua sponte.*

Later that night, Day was awakened, forcibly restrained and carried outside by several individuals, including Towle and Does 1–8. Once outside, Towle and Does 1–8 removed Day's underclothes and forced him to lie on a bed that had been set up outside the barracks. With Day's knees on the ground, Towle and Does 1–8 poured an unknown liquid between Day's buttocks. Towle and Does 1–8 next took a traffic cone and forcibly inserted the cone between Day's buttocks. Day attempted to resist the attack, but was told that his resistance would only make his situation worse.

While Towle and Does 1–8 continued their attack with the traffic cone, Caton took photographs and otherwise aided the attack on Day. Although he did not actively participate, Duquette was present during the attack on Day.

Following the attack, Day, though in shock, managed to notify the proper authorities in the chain of command in both the 104th, the MANG and the USAF. According to Day, neither the MANG, nor the USAF conducted a reasonable investigation of the attack. Further, Day alleges that none of the individuals involved in the attack was subsequently prosecuted or disciplined by the MANG or the USAF. Day avers that the MANG and the USAF failed to initiate a referral of Day to proper medical treatment or counseling.

At some point after the attack, Day attempted to file an administrative claim against the MANG and the USAF for the damages he suffered. In response, Day alleges that members of the 104th and the MANG thwarted his efforts by refusing to provide him with the proper forms and attempting to intimidate or coerce him to drop his claims.

On June 28, 1995, Day filed a claim pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671 *et seq.*, for the damages he suffered as a consequence of the July 22, 1994 attack at Volk Field. On February 26, 1996, the MANG and USAF denied Day's FTCA claim. Day then instituted this action within the thirty-day limitation period.

## III.  DISCUSSION

### A.  THE WESTFALL ACT: SUBSTITUTION OF PARTIES

The Westfall Act, also known as the Federal Employees Liability Reform and Tort Compensation Act, provides federal employees immunity from liability on state law tort claims for acts committed within the scope of their office or employment. 28 U.S.C. § 2679. The purpose of the Westfall Act is to assure that federal employees will not be adversely affected by fear of personal liability while performing their duties as civil servants. *Melo v. Hafer,* 13 F.3d 736, 744 (3d Cir.1994). By requiring substitution of the United States as a defendant, where an individual defendant was acting within the scope of his or her employment, the Westfall Act makes the Federal Tort Claims Act the sole remedial mechanism for negligence or misconduct by a federal employee. *Id.*

The Westfall Act vests the Attorney General for the United States or her designee with the power to certify that the challenged acts occurred within the scope of the employee's office or employment. 28 U.S.C. § 2679(d)(1)–(2). Where the Attorney General has refused to certify that an employee was acting within the scope of his or her office or employment, that individual may petition the court to certify scope of employment. 28 U.S.C. § 2679(d)(3). If certification occurs, a United States District Court will substitute the United States for an individual defendant-employee. 28 U.S.C. § 2679(d)(1).

To determine whether an employee acted within the scope of his or her office or employment, the court must look to the law of the state where the act or omission occurred. *Cardozo v. Graham,* 848 F.Supp. 5, 7 (D.Mass.1994) (citations omitted). Wisconsin follows the large majority of states in applying a two-tiered analysis to determine whether an act was done within the employee's scope of employment. First, the court must inquire whether the act "was part of or reasonably incidental to the duties [for which the individual] was hired. . . ." *Stephenson v. United States,* 771 F.2d 1105, 1106 (7th Cir. 1985). Second, the court must consider

whether the act was intended to benefit the employer. *Id.*

After some preliminaries, the United States Attorney for the District of Massachusetts, the Attorney General's designee, certified that, at the time of the alleged conduct, Balisle, Duclos, and Duquette were acting within the scope of their office or employment with the United States. Pursuant to 28 U.S.C. § 2679(d)(1), the court therefore substituted the United States as the defendant on the state law claims against Balisle, Duclos, and Duquette. Plaintiff has moved for reconsideration of this decision.

The United States Attorney did not, however, request substitution of the United States for Towle. Towle challenges the decision not to certify him under the Westfall Act, and has filed a motion asking this court to certify him as acting within his office or employment with the United States during the July 1994 attack on Day. The United States opposes Towle's motion.

■ Towle's motion and the plaintiff's motion regarding substitution will be denied. The complaint charges that Towle directly participated in the despicable attack on Day. Unlike Balisle, Duclos, and Duquette, whose potential liability arises out of an alleged failure to perform their official duties by intervening to prevent or stop the attack, Towle's potential liability arises out of his alleged actions in directly initiating and perpetrating the "rape" of the plaintiff. The public humiliation and victimization of a fellow enlisted soldier could not conceivably be construed as either "reasonably incidental" to Towle's duties as a non-commissioned officer in the MANG, or intended to benefit the MANG. The United States Attorney properly determined that Towle was not acting within the scope of his office or employment during the alleged attack on Day on July 22, 1994. On the other hand, Balisle, Duclos and Duquette were in the exercise of their official duties—however incompetently—and therefore their substitution is appropriate.

■ The decision not to certify that Towle was acting within the scope of his office or employment, as it happens, does not affect the outcome of this case. *Feres* unequivocal-

ly precludes both government and *individual* liability for injuries arising "incident to military service." *Feres v. United States,* 340 U.S. 135, 146, 71 S.Ct. 153, 95 L.Ed. 152 (1950); *United States v. Johnson,* 481 U.S. 681, 682, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) (barring a claim under *Feres* for injuries caused by a civilian to a service member acting incident to his service). A defendant's misconduct may exempt him from eligibility for substitution under the Westfall Act, but still leave him in the shelter of the *Feres* umbrella. At first blush, this may seem inconsistent. However, under the Westfall Act, the *defendant's* conduct is scrutinized, whereas, under *Feres,* the *plaintiff's* military status is the determinative factor. Thus, for the purposes of *Feres,* the defendant's status—whether civilian or military—is not controlling. *See, e.g., Johnson,* 481 U.S. at 682 (plaintiff's claim barred by *Feres* though defendant a civilian); *Townsend v. Seurer,* 791 F.Supp. 227 (D.Minn.1992) (same). As will be seen, Towle is immune from liability in his individual capacity for his participation in the attack on Day on July 22, 1994.

## B. THE FERES DOCTRINE

In 1946, Congress enacted the Federal Torts Claim Act ("FTCA"). 28 U.S.C. §§ 2671 *et seq.* Under the FTCA, the federal government may be sued for the negligent torts of its employees if the individual was acting within the scope of his or her office or employment and if none of the thirteen exceptions to the FTCA is applicable. Four years following its enactment, the United States Supreme Court, in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), grafted another exception to the FTCA. In *Feres,* the Court held that government and individual liability under the FTCA would be precluded for injuries arising "incident to [military] service." *Id.* at 146.

The considerations underlying the *Feres* Doctrine are three-fold. The first is geographic. Under the FTCA, "the law of the place where the act occurred governs liability." 28 U.S.C. § 1346(b). However, soldiers, unlike private individuals, do not have a choice as to where they are located. *Feres,* 340 U.S. at 143. If lawsuits were allowed for

conduct incident to military service, some soldiers would obtain relief, while others would not, depending on the state where the act occurred. *Id.* This would undermine the relationship of the government to its soldiers. *Id.* at 143–44.

Second, present and former service members have comprehensive benefits pursuant to the Veteran's Benefits Act. 38 U.S.C. §§ 301 *et seq.* The Supreme Court interpreted this comprehensive statutory scheme as an indication that Congress intended to exclude this area from generally applicable tort law. *Feres,* 340 U.S. at 144.

Third, tort actions against the military necessarily raise issues related to military judgment and decision making that cannot be separated from the underlying tort. Given the nature of their duties, military commanders should not be required to make their decisions in the shadow of potential litigation. *United States v. Shearer,* 473 U.S. 52, 57, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985); *see also United States v. Muniz,* 374 U.S. 150, 162, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).

The third rationale is perhaps the most powerful. Judicial inquiry into military decision making and discipline is impermissible because, to do so would "require judicial inquiry into, and hence intrusion upon, military matters." *United States v. Stanley,* 483 U.S. 669, 682, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987). As Justice Scalia noted, the " 'incident to service' test . . . provides a line that is relatively clear and that can be discerned with less extensive inquiry into military matters." *Id.* at 683.

### C. THE MOTIONS TO DISMISS

Day's injuries from the July 22, 1994 attack at Volk Field were incident to his military service and, therefore, are barred by the *Feres* doctrine as grounds for a lawsuit against these defendants.[2]

Many courts have discussed the Supreme Court's use of the phrase "incident to service" in *Feres.* Most agree that the inquiry should properly focus on whether the *plaintiff* was acting incident to his or her military service at the time the claim arose. *See e.g. United States v. Johnson,* 481 U.S. 681, 686 & n. 7, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) (Scalia, J., dissenting) (because plaintiff was acting incident to his military service at time of the tort, his estate's claim was barred under *Feres* doctrine, even though alleged tortfeasor was a civilian); *but see Lutz v. Secretary of the Air Force,* 944 F.2d 1477, 1485–86 (9th Cir.1991) (focusing on the defendants' actions, the court found their acts of searching an officer's desk for personal items and then displaying them was not incident to *defendants'* military service).

In examining the plaintiff's status at the time of the alleged act, courts have consistently interpreted "incident to service" broadly. *Veloz–Gertrudis v. United States,* 768 F.Supp. 38, 40 (E.D.N.Y.) *aff'd,* 953 F.2d 636 (2d Cir.1991), *cert. denied,* 504 U.S. 911, 112 S.Ct. 1944, 118 L.Ed.2d 549 (1992) (citations omitted). Although claims of service members are not universally barred, *United States v. Stanley,* 483 U.S. 669, 682, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987), *Feres* places a substantial burden on a plaintiff who is a service member at the time the tort occurs.

■ The First Circuit has not specifically construed the phrase "incident to service" relative to the *Feres* doctrine. The Fifth Circuit, however, has adopted a useful three-part test to determine what is meant by these words. Under this test, the court will examine "(1) [the plaintiff's] duty status, (2) where the injury occurred, and (3) the activity being performed." *Kelly v. Panama Canal Commission,* 26 F.3d 597, 600 (5th Cir. 1994) (citation omitted); *see also Velez v. U.S. ex rel. Dept. of Army,* 891 F.Supp. 61 (D.P.R.1995) (adopting Fifth Circuit's three-part test).

■ Under the first prong, the fact that Day was technically off-duty at the time of the alleged assault does not preclude applica-

---

**2.** Alternatively, the defendants assert (1) that Day's claims are barred by the assault and battery exception to the FTCA, 28 U.S.C. § 2680(h) and, (2) that because the government has not waived its sovereign immunity to civil rights claims under the FTCA, these causes of action are barred. Because the *Feres* doctrine is fatal to all counts in plaintiff's complaint, the court need not address the FTCA waiver or civil rights issues.

tion of the *Feres* doctrine. Indeed, the First Circuit has barred claims under the *Feres* doctrine even when the plaintiff was off-duty. For instance, in *Lauer v. United States*, 968 F.2d 1428, 1430 (1st Cir.), *cert. denied*, 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 685 (1992), a Naval enlistee, while off-duty, was injured as he walked along a road maintained by the Navy. *Id.* at 1429. The court barred Laurer's FTCA negligence claim under the *Feres* doctrine because it found that his injuries occurred incident to his military service. *Id.* In reaching this decision, the court clarified its earlier holding in *Morey v. United States*, 903 F.2d 880 (1st Cir.1990), by emphasizing that returning to a Naval ship *is* incident to military service even where the individual is returning from non service-related activities. *Lauer*, 968 F.2d at 1430; *see also Borden v. Veterans Admin.*, 41 F.3d 763 (1st Cir.1994) (*Feres* bars negligence claims arising from off-duty basketball game). In this case, though Day was technically off-duty, he was on the base, sleeping in military quarters at the time the attack commenced. His "duty status" therefore favors application of the doctrine.

The second segment of the Fifth Circuit's "incident to service" test has obviously been satisfied, because Day's injury occurred at Volk Field. The First Circuit has held that *Feres* usually bars suit when the injury occurs on a military base. *Morey v. United States*, 903 F.2d 880, 882 (1st Cir.1990).

Finally, at the time of the attack, Day was deployed at Volk Field for the purpose of performing his duties during the ORI. He was sleeping in a military barracks in preparation for his duties in the coming day. The military had substantial control over this activity—specifically, where and when he slept, what supplies he was given, and with whom he would room. During the attack, Towle and the others dragged Day outside the barracks into plain view on the military base. All participants were, or should have been, subject to military discipline.

Moreover, it is without dispute that Day would not have been at Volk field on the evening of July 21–July 22, 1994, "but for" his duties as a member of the MANG and USAF. Although Day was not technically on

duty at the time of the assault, off-duty recreation and rest time is incident to the performance of normal military responsibilities. *Lauer*, 968 F.2d at 1430 ("liberty recreation is part of the normal everyday life of a serviceman"). For all these reasons the court must conclude that Day was acting incident to his military duty at the time of the alleged attack and, under the *Feres* doctrine, the defendants' Motions to Dismiss must be granted.

Day urges the court to apply the analysis of the *Feres* doctrine set forth in *Taber v. Maine*, 67 F.3d 1029 (2d Cir.1995). In *Taber*, an off-duty serviceman brought a personal injury action against another off-duty service member (Maine), and the Government under the FTCA for injuries he suffered in an auto accident off base. *Id.* at 1032. Taber alleged that the government was vicariously liable under a theory of *respondeat superior* for Maine's negligent conduct in drinking excessively on base prior to the accident. *Id.* The district court found that the government was not liable because Maine's act of driving under the influence of alcohol was not in the line of duty. The court concluded that, under the doctrine of *respondeat superior*, the drunk driving fell outside his military service and granted the government's motion for summary judgment. *Id.*

After a jury trial, Taber received a $300,000 judgment against Maine individually. On appeal, even though the district court did not address *Feres*, the Second Circuit discussed this issue to clarify what it believed was an "extremely confusing" area of the law. *Id.* at 1038.

After considerable discussion of the history of the *Feres* doctrine, the Second Circuit held that the doctrine did not preclude government liability for Maine's negligence because—as to Taber's activity—there was "nothing characteristically military about an employee who, after working-hours are done, goes off to spend a romantic weekend with a companion." *Id.* at 1051. Because the accident happened on a public road and had nothing to do with Taber's military service, the court held that the *Feres* doctrine did not preclude government liability for the act of

negligently allowing Maine to drink on base and then drive. *Id.*

*Taber* did not purport to modify the Supreme Court's "incident to service" test. *Id.* at 1050; *Wake v. United States,* 89 F.3d 53, 61 (2d Cir.1996). Nor did *Taber* shift the focus of the inquiry from whether the victim's activity was "incident to service", to whether the tortfeasor's activity was "incident to service". *Wake,* 89 F.3d at 61. Instead, consistent with these principles, *Taber* attempted to clarify the *Feres* analysis and, in doing so, found that, *because* Taber's activity was not incident to his service, *Feres* did not pose a bar to government liability for his injuries. *Taber,* 67 F.3d at 1053.

*Taber* is an entirely inapposite case for at least two reasons. First, the alleged misconduct at issue here, the attack on Day, occurred on the base. Second, the plaintiff/victim here was injured, according to his own allegations, while under direct military supervision and as a result of tortious misconduct and negligence on the part of his fellow airmen and officers.

In contrast to *Taber, Veloz–Gertrudis v. United States,* 768 F.Supp. 38, 39 (E.D.N.Y.) *aff'd* 953 F.2d 636 (1991) *cert. denied,* 504 U.S. 911, 112 S.Ct. 1944, 118 L.Ed.2d 549 (1992), is virtually on all fours with this case. There, a navy recruit was injured by other crew members during a hazing incident in the engine room of the ship. *Id.* at 38–39. The plaintiffs claimed that the *Feres* doctrine was inapplicable and, therefore, the United States was liable for the intentionally tortious conduct of the crew members as well as the negligent supervision of the crew. *Id.* at 39. In support of this argument, the plaintiff asserted that, because hazing is prohibited by the Navy, Veloz–Gertrudis' injuries could not be construed as "incident" to his military service. *Id.* at 40.

The court rejected this argument, finding that the hazing and the alleged failure to supervise fell squarely within the ambit of *Feres.* Inquiry by the court, inevitably, would require an impermissible review of military discipline or the lack thereof. *Id.* at 41–42. Similarly, here, a trial would require the court to determine whether the command hierarchy at Volk Field was performing com-

petently. The inappropriateness of such an inquiry is the essence of the rationale behind the *Feres* prohibition. *Feres,* 340 U.S. at 146.

Plaintiff's large number of claims—including negligent supervision and enlistment, assault and battery, intentional and negligent infliction of emotional distress, and state and federal civil rights claims—do not save him from the reach of *Feres.*

■ Claims for negligent enlistment and supervision are barred by *Feres,* because, again, these decisions require examination of military decision making. *United States v. Shearer,* 473 U.S. 52, 58, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (citations omitted); *Satterfield v. United States,* 788 F.2d 395, 399 n. 3 (6th Cir.1986). Similarly, although *Feres* arose out of negligence claims, the rationale behind *Feres* is equally applicable to claims arising out of intentional torts. *Jaffee v. United States,* 663 F.2d 1226, 1235 (3d Cir. 1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). As with a negligence action, litigation arising from alleged intentional torts has the same potential to disrupt military discipline and decision making. *Id.* Courts have therefore denied claims under *Feres* for intentional torts if the plaintiff was acting incident to his or her military service. *See, e.g., Byrd v. United States,* 668 F.Supp. 1529, 1531 (M.D.Fla. 1987).

Although there has been no substitution of the United States for Towle, he enjoys no less protection from *Feres.* Citing *Feres,* the Supreme Court in *United States v. Johnson,* 481 U.S. 681, 682, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987), barred a claim for injuries due to civilian negligence to a service member because, at the time of the accident, the plaintiff service member was acting incident to his service. As this court has repeatedly noted, the focus of the *Feres* analysis is the status and situation of the *plaintiff* at the time of injury, not the tortfeasor. Given this perspective, there is no inconsistency in declining to substitute the United States for Towle (and requiring him to shoulder the costs of his own defense) while at the same time concluding that *Feres* bars Day's suit against

him. Moreover, even a trial of Towle alone would require improper oversight by the court of military decision making, discipline and regulation, an intrusion that *Feres* makes taboo. *Jaffee,* 663 F.2d at 1234; *Uptegrove v. United States,* 600 F.2d 1248, 1250 (9th Cir.1979), *cert. denied,* 444 U.S. 1044, 100 S.Ct. 732, 62 L.Ed.2d 730 (1980). *Townsend v.. Seurer,* 791 F.Supp. 227, 230–31 (D.Minn.1992).

## IV. CONCLUSION

The utterly despicable nature of this alleged attack and the disturbing questions it raises about the adequacy of discipline in the MANG—specifically the 104th—would generate indignation in the mind of any fair-minded person, civilian or military. Under the circumstances, it is tempting to try to manufacture a road around *Feres* in search of substantial justice. However, the tendency of the Supreme Court over the years has been not only to affirm, but to expand, the reach of the *Feres* doctrine. *See, e.g., United States v. Muniz,* 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963) (reinforcing *Feres* rationale); *United States v. Shearer,* 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (impermissible for courts to look into matters of military discipline); *Johnson* 481 U.S. 681, 107 S.Ct. 2063, 95 L.Ed.2d 648 (claims against civilian government employees where decedent was acting incident to his military service barred). Given the clarity of the precedent, it would merely compound the injury suffered by plaintiff to hold out the false hope that his claims enjoy any prospect of success under existing law.

Nevertheless, the court can do something. A copy of this decision will be sent to the Commander of the 104th, the Commander of Volk Field, and to the Secretary of the Air Force, with the request that appropriate personnel forward to the court—voluntarily and as a matter of discretion—a copy of any reports relating to the incident of July 22, 1994, along with a description of any discipline imposed on the perpetrators or the personnel responsible for supervising them, or any new investigation now contemplated. If under any applicable statute or regulation a response would be inappropriate, military authorities are, of course, free to inform the court that they must decline the request. The court will keep this case open for an additional ninety days to permit a response.

For the foregoing reasons, the court will DENY Towle's Motion to Substitute the United States for him (Docket No. 23–2), DENY Day's Motion for Relief from the Court's Order Substituting the United States for the Defendants Balisle, Duclos and Duquette (Docket No. 27), and ALLOW the Motions to Dismiss of the USAF, Towle, the MANG and Duquette (Docket Nos. 14, 23–1, 31 & 50). The complaint against Caton and the "John Doe" defendants will be dismissed by the court *sua sponte.*

A separate order will issue.