Andrew DAY, Plaintiff, Appellant,

v.

MASSACHUSETTS AIR NATIONAL GUARD, United States Department of the Air Force, James Duclos, Richard Duquette, James Towle, Duane Caton, James Balisle, and John Does 1–8,Defendants, Appellees.

No. 98–1727.

United States Court of Appeals, First Circuit.

Jan. 29, 1999.

---

Daniel E. Bruso with whom Mark D. Mason and Cooley, Shrair P.C. were on brief for appellant.

Karen L. Goodwin, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellees.

Before BOUDIN, LYNCH, and LIPEZ, Circuit Judges.

BOUDIN, Circuit Judge.

This case presents uncommonly difficult questions as to whether a serviceman, subject to assault and battery in an on-base hazing incident properly described by the district court as "despicable," may recover damages from the government or from military personnel variously connected to the attack. The district court ruled that the claims were barred by the doctrine of *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), limiting suits for injuries arising "incident to military service." *Id.* at 146, 71 S.Ct. 153. *Day v. Massachusetts Air Nat'l Guard,* 994 F.Supp. 72 (D.Mass.1998). We affirm in part and reverse in part.

Because the complaint was resolved on motions to dismiss, the facts are set forth as alleged in the complaint and inferences are taken in the light most favorable to the non-moving party. *See Dartmouth Review v. Dartmouth College,* 889 F.2d 13, 16 (1st Cir. 1989). That party is the plaintiff in the district court, Andrew Day, who at the time of the alleged incident was an enlisted airman of the Massachusetts Air National Guard, holding the rank of senior airman/E–4. In July 1994, Day was serving with the 104th Fighter Group and was assigned to participate in a training exercise at Volk Field in Wisconsin.

During this exercise, Day says that he saw other members of the 104th subjected to repeated instances of severe hazing; for example, Day claims that in one case other airmen ripped off the clothes of a member of the 104th, duct taped the naked victim to his bed, and left him outside subject to public ridicule. Day also alleges that the officers and non-commissioned officers did nothing to halt the attacks. Day also says that he was warned by several men, including several of the later defendants, that he would be the victim of similar attacks.

The incident that gives rise to the lawsuit occurred on July 22, 1994. According to the complaint later filed by Day, after his release from duty on July 21, he went to a party at the Base Club at Volk Field together with other members of the 104th. Day left the party at 1 a.m. on July 22, 1994, returned to his barracks on the base, and went to sleep. Day says that he asked Richard Duquette, apparently the senior enlisted man on the scene, whether Day would be attacked and was assured he would not be attacked that night.

Nevertheless, during the night Day was awakened by several individuals; these including serviceman (and later defendant) James Towle and others whom Day was unable to identify (but are listed in the complaint as John Does 1 through 8). These men stripped Day, carried him outside, forced him to kneel on the ground with his stomach across a bed set up outside the barracks and—pouring an unknown liquid between Day's buttocks—forcibly inserted a traffic cone between them. Another defendant, serviceman Duane Caton, allegedly took photographs.

The complaint alleges without detail that Duquette aided and abetted the attack. Duquette's own version, which the military apparently accepted, was that he was the one who broke up the attack. James Balisle and James Duclos, the remaining individuals eventually named in the subsequent complaint, were not alleged to have directly participated in the attack; it was Day's theory that Balisle and Duclos were implicated because they had negligently supervised others.

On July 19, 1996, Day filed his present damage claim in the district court, naming as defendants the Massachusetts Air National Guard, the U.S. Department of the Air Force, five named individuals (Duquette, Towle, Caton, Balisle and Duclos), and John Does 1 through 8. The complaint asserted against the defendants a federal civil rights claim under 42 U.S.C. § 1983 and/or a host of state claims for civil rights violations under state law, M.G.L. ch. 12, § 11I, and for assault, battery, intentional and negligent infliction of emotional distress, and negligent enlistment and supervision.

Acting under the Westfall Act, the United States Attorney certified that Duquette, Duclos and Balisle had been acting within the scope of their office or employment "at the time of the incident out of which the claim arose." 28 U.S.C. § 2679(d)(1). The effect of certification is to substitute the United States as defendant on certified claims and protect the individual from liability as to such claims. *Id.* §§ 2679(b)(1), (d)(1).[1] The U.S. Attorney declined to certify the claims against Towle or Caton under the Westfall Act.

Thereafter, the district court in a thoughtful decision dated February 12, 1998, dismissed all claims against all defendants under the *Feres* doctrine. The court concluded that even as to deliberate injuries, the injuries alleged by Day were "incident to military service" based primarily on Day's duty status, the on-base location of the injuries, and the liability of the wrongdoers to military discipline. *See Day,* 994 F.Supp. at 77–80. The court upheld the certifications by the U.S. Attorney and rejected Towle's claim that he also should have been certified (Caton defaulted and did not challenge the denial). *Id.* at 76.

On this appeal by Day, the central questions are whether the *Feres* doctrine applies; if so, whether it bars his claims against the individual servicemen named as defendants; and to the extent it does not whether claims against individual defendants were properly certified under the Westfall Act. These are primarily questions of law, which we decide *de novo,* the facts alleged in the complaint being taken as true. *See United States v. Omar,* 104 F.3d 519, 522 (1st Cir.1997). We conclude that *Feres* bars federal claims against all defendants and state claims against the United States and its components but does not bar state claims against individual servicemen for conduct outside the scope of their duties. We also uphold the district court's decisions as to the Westfall Act to the extent that they are challenged.

Starting with *Feres,* the clearest way to approach this issue is to consider whether

*Feres*'s incident to service test bars Day's claims against the federal government and its components, as the district court held. Although Day's asserted aim on appeal is to secure relief only against certain of the individual defendants and not the government, his argument rests in part on his interpretation of the *Feres* rationale and the factors ordinarily considered under *Feres.* In any case, *Feres* and its proper application is the building block on which the balance of the analysis must rest.

■ As sovereign, the United States may not be sued for damages without its consent. *See Murphy v. United States,* 45 F.3d 520, 522 (1st Cir.1995). The United States has consented, in the Federal Tort Claims Act, 28 U.S.C. §§ 2671 *et seq.,* to be sued for damages for personal injury caused by "the negligent or wrongful act or omission" of a federal employee "while acting within the scope of his employment," provided that in the same circumstances a private employer would be liable for the acts of his employee under the local law. 28 U.S.C. §§ 1346(b), 2674, 2675(a). No explicit exception bars claims by or against military personnel.

Nevertheless, in 1950 the Supreme Court determined in *Feres* that the Federal Tort Claims Act did not extend to a suit by a deceased soldier's estate for negligent medical treatment by army surgeons resulting in the soldier's death. *See* 340 U.S. at 145–46, 71 S.Ct. 153. Using the like-circumstances language of section 2674(a) as a point of departure, Justice Jackson said that no precedent allowed a soldier to recover for negligence against his superiors or his government, and his opinion offered policy reasons against such recovery. *See id.* at 141–42, 71 S.Ct. 153. He concluded that the statute did not extend to suits for "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. 153.

Writing in the aftermath of the Second World War, Justice Jackson likely thought that Congress (which had only recently en-

1. The certification as to Duquette excluded the claim against him under section 1983, presumably because the U.S. Attorney thought that federal claims could not be certified. 28 U.S.C. § 2679(b)(2); *Woods v. McGuire,* 954 F.2d 388, 391 (6th Cir.1992).

acted the Federal Tort Claims Act) did not mean to subject itself to negligence claims by every soldier injured in the line of duty or to open military decisions to second-guessing by civilians. *See Feres*, 340 U.S. at 141–142, 71 S.Ct. 153. In an age of modest tort judgments, the loss of a tort claim was balanced by the assurance of free medical care and veteran's benefits for an injured soldier. *See id.* at 144–45, 71 S.Ct. 153. The prospect of disparate state law governing tort liability for the military looked ominous. *See id.* at 143, 71 S.Ct. 153. In all events, the Court was unanimous.

In the ensuing half-century, the Court has reaffirmed and expanded the *Feres* doctrine, while somewhat adjusting the reasons given for it. The most significant expansion, from a conceptual standpoint, came in *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). There, the Court used the incident to service test to bar a suit by seamen, not against the government under the Federal Tort Claims Act but against individual navy superiors, for deliberate racial discrimination in making assignments and other personnel decisions. *See Chappell*, 462 U.S. at 304–05, 103 S.Ct. 2362.

■ The *Chappell* suit was brought under the *Bivens* doctrine, which gives individuals federal tort claims against government officials for constitutional violations, here, racial discrimination. *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Although the Federal Tort Claims Act's like-circumstances requirement was irrelevant to such a suit (brought directly under the Constitution), the Court simply invoked *Feres*'s policies to bar recovery, pointing to *Bivens*'s express caution that remedies may not be available when "special factors counselling hesitation" are present. *Chappell*, 462 U.S. at 298, 103 S.Ct. 2362 (quoting *Bivens*, 403 U.S. at 396, 91 S.Ct. 1999).

Although *Chappell* relied directly on *Feres*, it focused primarily on only one of the reasons given in *Feres*, namely, the concern that tort suits would interfere unduly in military affairs and specifically on the need for exclusivity in military discipline and grievance matters. *Chappell*, 462 U.S. at 301–02, 103 S.Ct. 2362. This aim to protect an exclusive military sphere of authority was emphasized again in *United States v. Shearer*, 473 U.S. 52, 57, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (an FTCA case), and in *United States v. Stanley*, 483 U.S. 669, 682–83, 107 S.Ct. 3054, 97 L.Ed.2d 550 (1987) (a *Bivens* case), and *United States v. Johnson*, 481 U.S. 681, 690–91, 107 S.Ct. 2063, 95 L.Ed.2d 648 (1987) (an FTCA case), both decided two years after *Shearer*. The circuit courts, with a few exceptions, have followed the Supreme Court's lead in generously applying and even extending *Feres* to different fact patterns and different claims.[2]

The incident to service test itself has become a talisman, although perhaps not so intended (Justice Jackson spoke also of "service connected" injuries, *Feres*, 340 U.S. at 142, 71 S.Ct. 153). Courts have sought to determine whether an injury was incident to service by asking whether it occurred on a military facility, whether it arose out of military activities or at least military life, whether the alleged perpetrators were superiors or at least acting in cooperation with the military, and—often stressed as particularly important, *see Johnson*, 481 U.S. at 686 & n. 7, 107 S.Ct. 2063—whether the injured party was himself in some fashion on military service at the time of the incident. No single element in the equation, the Supreme Court has said, is decisive. *See Shearer*, 473 U.S. at 57, 105 S.Ct. 3039.

■ Judged mechanically by such criteria, *see, e.g., Kelly v. Panama Canal Comm'n*, 26 F.3d 597, 600 (5th Cir.1994) (three factor test), Day's claims against the United States are barred. Day, a serviceman, was threatened and assaulted while on military service and on a military base. The threats and

---

2. *See, e.g., Borden v. Veterans Admin.*, 41 F.3d 763 (1st Cir.1994); *Wright v. Park*, 5 F.3d 586 (1st Cir.1993); *Lauer v. United States*, 968 F.2d 1428 (1st Cir.), *cert. denied*, 506 U.S. 1033, 113 S.Ct. 812, 121 L.Ed.2d 685 (1992); *Veloz–Gertru-*

*dis v. United States*, 768 F.Supp. 38, 40 (E.D.N.Y.), *aff'd*, 953 F.2d 636 (2d Cir.1991), *cert. denied*, 504 U.S. 911, 112 S.Ct. 1944, 118 L.Ed.2d 549 (1992).

assault were perpetrated by other service personnel in the course of hazing activities which, however outrageous, are no strangers to military life and were apparently inflicted on other personnel as well as Day. The perpetrators were subject to military discipline; Day was entitled to medical treatment if required. True, Day was asleep just before the assault began, rather than on duty; but this is a small point and practically the only one in his favor under *Feres*.

That the torts in this case were intentional, on the part of some of the defendants, does not itself defeat *Feres*. *Chappell* itself involved claims of intentional racial discrimination, *see* 462 U.S. at 297, 103 S.Ct. 2362, and *Stanley* involved the deliberate but undisclosed subjection of a serviceman to an LSD experiment, *see* 483 U.S. at 671–72, 107 S.Ct. 3054. We conclude that Day's claims against the United States or its components are thus barred by *Feres*.

■ Possibly *Feres* itself deserves reexamination by the Supreme Court. A few of *Feres*'s original reasons no longer seem so persuasive, *cf. Johnson*, 481 U.S. at 694–700, 107 S.Ct. 2063 (Scalia, J., dissenting), and intrusions by courts to grant equitable relief in military matters have become more familiar in recent years. *See id.* at 700, 107 S.Ct. 2063. But some core concerns about interference in military discipline remain highly plausible, *cf. Chappell*, 462 U.S. at 300, 103 S.Ct. 2362, even if they might be assuaged by a narrower rule. And the Supreme Court has increasingly reminded the lower federal courts that departures from prior Supreme Court precedent should not normally be pioneered by circuit or district judges. *Khan v. State Oil Co.*, 93 F.3d 1358, 1363 (7th Cir.1996), *rev'd on other grounds*, 522 U.S. 3, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997).

This brings us to the second set of claims presented by Day's complaint, namely, his claims not against the United States or its components but against individual guardsmen, both under section 1983 and for various state-law torts. As to Towle and Caton, none of these claims was certified under the Westfall Act. Duquette was not certified as to the federal claim under section 1983, and Day challenges the certification of the state law claims for Duquette (an issue addressed below).

■ The question whether the *Feres* doctrine protects the individual defendants in this case is easier as to some claims than as to others. At the easier end of the spectrum are federal claims. The only one set forth in the complaint is the claim, under section 1983, directed against Duquette, Towle, Caton and Does 1 through 8. We will assume *arguendo* that the physical attack on Day itself might colorably raise a claim of unlawful seizure or even a substantive due process violation, subject to redress under *Bivens* if done under color of federal law or under section 1983 if done under color of state law. Nevertheless, in our view the case law bars such federal-law claims wherever the United States itself is protected by the *Feres* doctrine as to the same injury.

*Feres* itself was concerned solely with the vicarious liability of the United States under the Federal Tort Claims Act. But in *Chappell*, as already noted, a unanimous Supreme Court held that *Bivens* actions against individual defendants raised the same policy concerns (primarily, the need for military autonomy); and the Court felt free to read an implied *Feres* limitation into a federal claim whose contours were the Supreme Court's responsibility. Elsewhere, the Supreme Court has indicated that immunity-related limitations on *Bivens* are presumptively to be applied to claims under section 1983. *Butz v. Economou*, 438 U.S. 478, 500, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978).

This court has already held that *Feres* applies to section 1983 claims against individuals, as have several other courts,[3] and suggested that the same implied limitation must be read into "kindred" claims based on like federal statutes. *Wright*, 5 F.3d at 591. It is true that *Bivens* claims were virtually invented by the Supreme Court, while section 1983 is a federal statute shaped by Congress. But much of the ancillary law under

---

**3.** *Wright v. Park*, 5 F.3d 586 (1st Cir.1993); *see also Bowen v. Oistead*, 125 F.3d 800, 804 (9th Cir.1997); *Uhl v. Swanstrom*, 79 F.3d 751, 755–56 (8th Cir.1996).

section 1983, especially that related to immunities, was also created by the Supreme Court. *See Butz,* 438 U.S. at 500–502, 98 S.Ct. 2894. It is therefore not easy to see why the Supreme Court would impose an implied limitation on *Bivens* claims based on what it deemed compelling federal policy interests reflected in *Feres* and refuse to apply that limitation to federal claims brought under section 1983 or similar federal statutes.

■ While *Feres* thus disposes of any section 1983 claims in this case against individual defendants, the question remains whether *Feres* also bars claims under state law against individual defendants; and in addressing this issue, we reserve for the moment the possibility that such individuals may be protected under the Westfall Act. In fact, the central issue is whether *individuals* can be sued under state law in situations where *Feres* applies because the injury is incident to service (thus barring suits against the government) but where the defendant's conduct is outside the scope of employment (thus eliminating a defense for the individual under the Westfall Act).

■ One might suppose that federal policies to protect military autonomy, strong enough to create an implied exception to *Bivens* for injuries incident to service (and, we have held in *Wright,* to other federal claims like section 1983), would also be offended by allowing state claims against individuals for such injuries—perhaps even more so since they are even more likely to be brought in state court. Several courts have so held without much hesitation. *See Stauber v. Cline,* 837 F.2d 395, 399–400 (9th Cir. 1988); *Hefley v. Textron, Inc.,* 713 F.2d 1487, 1490–92 (10th Cir.1983) (collecting cases). True, the Supreme Court has no authority, as it does with federal claims, simply to interpolate exceptions; but it can recognize federal *immunities* to state claims, so far as needed to protect the federal functions, and has done so in the past. *Howard v. Lyons,* 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed.2d 1454 (1959); *Barr v. Matteo,* 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434 (1959).

Nevertheless, the Supreme Court has not yet taken this step of converting *Feres* into an immunity for individuals against state law claims. To do so would mean that military service personnel who were the victims of serious intentional torts inflicted by other service personnel on base would effectively be denied any civil remedy against a wrongdoer who was *not* acting within the scope of his military employment—a result that has caused more than one court to blanch. *See, e.g., Lutz v. Secretary of the Air Force,* 944 F.2d 1477 (9th Cir.1991). Instances would be one serviceman deliberately shooting another in the course of an on-base card game, or the on-base rape of one enlistee by another.

In such cases, the *Feres* doctrine already protects the federal treasury. Further, the core concerns of *Feres* about military discipline are largely—although not entirely—assuaged by the ability of the United States to certify under the Westfall Act those state-law claims against military personnel which it believes are sufficiently related to the defendant's duties to fall within the scope of defendant's employment. Thus, the use of force by a superior to compel obedience to an order would be within the scope of employment, and therefore certifiable, no matter how mistaken the superior's judgment.

Nor is there a clear consensus in the circuits in favor of extending *Feres* to state law claims against individuals for conduct outside the scope of their employment. As already noted, some cases have assumed that *Feres* barred such state claims even against the individual serviceman, but a respected Seventh Circuit panel held squarely that *Feres* should not be read in this fashion. *Cross v. Fiscus,* 830 F.2d 755, 757 (7th Cir.1987). This court in *Wright v. Park* went no further than to say that *Feres* governs claims under section 1983 and "kindred statutes," referring in context to the federal whistleblower statute, 5 U.S.C. §§ 2301–02, so the issue we now face is an open one in this circuit.

The memories of an Army at war worldwide have faded since Justice Jackson's day, and *Feres* has now been questioned in whole or in part by three current members of the Supreme Court. *See Johnson,* 481 U.S. at 702, 107 S.Ct. 2063 (Scalia, dissenting, joined by Brennan, Marshall and Stevens); *Stanley,* 483 U.S. at 709, 107 S.Ct. 3054 (O'Connor,

concurring in part and dissenting in part). This is of no consequence as to claims against the government, or brought under *Bivens* (or section 1983), since *Feres* remains the binding precedent. But it does warrant some caution in a too swift extension of *Feres* by the lower federal courts to eliminate a set of claims (those based upon state law) made only against an individual soldier for conduct that the government itself has declined to certify under the Westfall Act.

The issue is very close and the Supreme Court may yet take the step of converting *Feres* into a formal immunity barring state law claims against individuals for conduct, however unauthorized and deliberate, that causes injury to the plaintiff incident to military service. But the risk of some injustice is manifest, the policy arguments for the extension are at the margin, and the Supreme Court has been increasingly loath to override state law in areas of traditional state responsibility without a clear Congressional mandate. *See Wisconsin Public Intervenor v. Mortier*, 501 U.S. 597, 605, 111 S.Ct. 2476, 115 L.Ed.2d 532 (1991). If the step is to be taken, it should be taken by the Supreme Court or upon more evidence that without it military autonomy will be seriously threatened.

It is worth stressing that the claims thus preserved involve only a narrow class of cases, namely, ones where the plaintiff's injury is "incident to military service" but defendant's misconduct is so patently unconnected to his or her official duties as to fall outside the scope of employment. If the government represents in a Westfall Act certificate that the conduct is within the scope of employment—itself a quite broad concept[4]—we would expect that the deference ordinarily shown to the executive in military matters would normally carry the day. *See Orloff v. Willoughby*, 345 U.S. 83, 93–94, 73 S.Ct. 534, 97 L.Ed. 842 (1953). *Cf. Gilligan v. Morgan*, 413 U.S. 1, 10, 93 S.Ct. 2440, 37 L.Ed.2d 407

(1973). Indeed, if the government here had shown that Day's hazing was part of a military toughening-up policy, *all* claims against the individuals would be barred under the Westfall Act, no matter how unattractive the policy might be. *Cf. Stanley, supra.*

■ This resolution leaves standing (so far as *Feres* is concerned) Day's state tort claims against individual defendants, and it brings us to issues of certification under the Westfall Act. If the United States was properly substituted in this case for an individual defendant under the Westfall Act, then the state claims against that defendant are barred under the Westfall Act itself. 28 U.S.C. § 2679(d). Nor in that instance does the claim proceed against the United States, since *it* is protected by *Feres*. Therefore, we must now review the district court's decision upholding the Westfall Act certification of Duquette, a decision appealed here by Day.

■ A plaintiff who challenges a defendant's certification under the Westfall Act bears the burden of proving the defendant acted outside the scope of his employment. *See Rogers v. Management Technology, Inc.*, 123 F.3d 34, 36 (1st Cir.1997). Day now argues that the district court should have held an evidentiary hearing to determine whether Duquette was acting within the scope of his employment under the Westfall Act; he does not challenge the certification of Balisle and Duclos who were not present during the attack. However, Day apparently did not request an evidentiary hearing in the district court and, in any event, we do not believe that one was necessary in this case given the state of the pleadings and evidence in the district court.

Day's verified complaint alleged that "Duquette ... threatened Day that he would be the victim of similar attacks [to those he had witnessed]" and that "Duquette was present during the Attack and aided and abetted the Attack." Duquette's affidavit, filed in opposi-

---

4. In most states most conduct connected to employment, even if not authorized, is likely to be within the scope of employment if done for the purpose of serving the employer. *See Lyons v. Brown*, 158 F.3d 605, 609–10 (1st Cir.1998); *Restatement (Second) of Agency* §§ 228–29, 231–36 (1958). The showing necessary to invoke *Feres*

indicates some connection to employment, so it is only fairly outrageous misconduct—usually intentional and done solely for personal reasons—that is likely to fall within *Feres* but outside the Westfall Act. *See Lyons*, 158 F.3d at 610; *Restatement, supra*, §§ 231 & cmt. a, 235–36.

tion to the Day's motion for relief from the order substituting the United States for Duquette, stated that Duquette had discussed hazing incidents with Day, but that Duquette had "told him that I thought it was unlikely that such an incident would happen to him." Duquette also admitted to being present at the attack on Day for a few moments, but said that "[a]s soon as I realized what was taking place, I ... told them to stop." Day filed no other affidavits or other evidence of his own.

Before a court is called upon to convene an evidentiary hearing, it is entitled to something more than conclusory abstractions from the party demanding the hearing. In this case, it had nothing but quasi-legal generalities in Day's complaint ("threatened," "aided and abetted"), juxtaposed with a factual and exculpatory account from Duquette. Day was free to counter Duquette's affidavit with details of his own to create a conflict on the facts, but he chose not to do so. In this case, whether or not Day asked for a hearing, he did not justify one under ordinary summary judgment standards, *Medina–Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir.1990), which are a good analogy in this instance.

Neither party has addressed the First Circuit precedent of *Wood v. United States*, 995 F.2d 1122 (1st Cir.1993). We mention it here because of its holding that the government cannot base its certification of the defendant on a determination that the "harm-causing incident" alleged by plaintiff did not occur at all. *Id.* at 1129. Reading some language in *Wood* very broadly, one might conclude that the district court has to accept the plaintiff's entire version of facts, including his characterization of events. However, *Wood* makes clear that it is only the existence of a harm-causing incident that must be assumed to be true and not the plaintiff's characterization of events. *See id.*

In this case, there is no dispute that Day was assaulted. Indeed, both Duquette and Day agree that they had conversations about hazing incidents, that Day was ultimately attacked, and that Duquette was present for at least part of the attack. As stated in Day's brief, "[t]he difference between Day's recollection of events and Duquette's recollection lies in the characterization of Duquette's actions." Therefore, it was permissible under *Wood* for the district court to uphold the certification of Duquette. *See id.* at 1129.

■ Where, after all this, does Day's case stand? As to the federal government defendants, all claims—whether against the United States (substituted for Duquette and two other defendants) or the Department of the Air Force (named in the complaint) are barred by the *Feres* doctrine. It does not matter whether the Massachusetts National Guard is viewed as a federal or state entity. *See generally Bowen v. Oistead,* 125 F.3d 800, 804–05 (9th Cir.1997). If federal, *Feres* applies; if not, damage claims against it in federal court are barred by the Eleventh Amendment. *See Alabama v. Pugh,* 438 U.S. 781, 782, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978).

■ As to the individual defendants, the federal claims against any of the defendants are also barred by *Feres'* incident to service test. State claims against Duquette, Balisle and Duclos are barred by the Westfall Act certifications upheld by the district court; in this regard we uphold the district court's dismissal but based on the certifications rather than *Feres.* Our only real difference with the district court concerns the state claims against Towle, Caton and Does 1–8; those claims were not certified and, as we read the Supreme Court cases, are not precluded by *Feres*—because we do not view it as extending (at least so far) to state claims brought against individuals for conduct not within the scope of their employment.

On remand, the district court is under no obligation to retain jurisdiction over the reinstated state claims against Towle, Caton and Does 1–8. Indeed, we would be surprised if the district court chooses to exercise supplemental jurisdiction in these circumstances. *See* 28 U.S.C. § 1367(c)(3); *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). However, if it does decline to exercise jurisdiction, dismissal should be without prejudice to Day's assertion of such claims in state court.

The judgment of the district court is *vacated* insofar as it dismissed on *Feres* grounds the state claims asserted against Towle, Caton and Does 1–8, and in all other respects the judgment is *affirmed*. The case is *remanded* for further proceedings consistent with this opinion. Each side shall bear its own costs on this appeal.

*It is so·ordered.*