# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00302-CV

**Bill L. Burkett, Appellant**

**v.**

**William W. Goodwin, Jackie L. Taliaferro and Archie M. Meador, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. GN000159, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

Bill Burkett, a retired Lieutenant Colonel in the Texas Army National Guard, brought a personal injury action against appellees, William Goodwin, Jackie Taliaferro, and Archie Meador, all of whom were his superior officers.[1] Burkett appeals from the trial court=s order dismissing his lawsuit. While Burkett sets out his appellate issue as Awhether the court below erred in granting summary judgment to the defendants-appellees,@ he raises the following contention in the argument portion of his brief: Because he commenced his claims against the appellees in their individual capacities only, (1) his claims were justiciable in a civilian court and (2) the appellees were not entitled to statutory immunity under Texas Government Code section 431.085; therefore, the court erred in dismissing his lawsuit. *See* Tex. Gov=t Code Ann. ' 431.085(a) (West 1998). We will

---

[1] Goodwin was chief of staff for the Adjutant General for the State of Texas, Taliaferro was director of military personnel responsible to the Adjutant General for all matters pertaining to the overall management and supervision of the Directorate of Military Personnel, and Meador, Burkett=s immediate supervising officer, served as director of plans, operations and training, and military support.

liberally construe Burkett=s brief and will focus our review on this contention. *See* Tex. R. App. P. 38.9. We will affirm the trial court=s order of dismissal.

## Background

Burkett alleged that on January 17, 1998, he collapsed at the Abilene airport on his return home from an active duty assignment in Panama with the United States Army. He alleged that his collapse was caused by a tropical disease he contracted while on active duty in Panama. After several days of illness, Burkett went to Dyess Air Force Base in Abilene seeking medical care. Individuals at the medical facility=s admissions office told Burkett that they needed clearance or confirmation of Burkett=s active duty status from the Texas Army National Guard before he could be admitted for medical care. Burkett alleged that pursuant to Texas Army National Guard regulation 7-3, had any of the appellees, who were in command positions with the Texas Army National Guard, provided the admissions office at Dyess with clearance or confirmation, he could have received prompt medical attention at Dyess. He asserted that based on Guard regulations, it was Goodwin=s, Taliaferro=s and Meador=s ministerial duty to provide clearance or confirmation of his active duty status to Dyess and that they were without discretion or authority to refuse to provide the clearance or confirmation of his status to Dyess.

Burkett alleged that over the next four months Goodwin, Taliaferro and Meador willfully and maliciously refused to provide Dyess with clearance or confirmation of his duty status thereby denying him access to military medical care. Burkett alleged that these three individuals= conduct was Aso completely beyond and outside any military authority or discretion as to have been outside the scope of military duty, outside any military duty, outside any military capacity, and not

**2**

incident to military duty.@  Burkett alleged that they Aacted purely as individuals, not as military officers, albeit pretending to have military authority and abusing their offices through such pretense in order to willfully and maliciously wreak havoc upon [Burkett=s] life.@  As a result of their refusal to provide clearance and confirmation of Burkett=s active duty status, he was unable to obtain a medical diagnosis or military medical care for his debilitating illness.  Burkett finally received access to military health care due to the intervention of a United States Congressman.  By the time he received military health care, the disease had ravaged his body, and left him disabled and unable to return to either military duty or gainful civilian employment.  Burkett alleged that as a direct and proximate result of Goodwin=s, Taliaferro=s and Meador=s tortious conduct, he suffered various personal injuries.  Further, he alleged that because their actions were willful and malicious, he was entitled to exemplary damages.

Goodwin, Taliaferro and Meador moved to dismiss the case for want of jurisdiction and moved for summary judgment.  They contended that the trial court was without subject matter jurisdiction over the case because the military personnel matter at issue was not justiciable in civilian courts.  *See Feres v. United States*, 340 U.S. 135, 146 (1950); *Newth v. Adjutant Gen.=s Dep=t*, 883 S.W.2d 356, 358 (Tex. App.CAustin 1994, writ denied).  Additionally, they moved for summary judgment on the grounds that they were statutorily immune for their alleged actions.  Tex. Gov=t Code Ann. ' 431.085 (West 1998).  Burkett responded to the appellees= motions contending that indeed the court had subject matter jurisdiction because he was suing Goodwin, Taliaferro and Meador in their individual capacities and not as military personnel.  Burkett contended that due to the appellees= intentional failure to discharge a mandatory, non-discretionary duty under Texas Army

**3**

National Guard regulation procedure 7-3 to confirm Burkett=s duty status to the medical facility at Dyess, he suffered damages for which he could recover at common law. The trial court dismissed Burkett=s case.

## Discussion

We first address whether the trial court erred in dismissing Burkett=s case on the ground that his claims were not justiciable in a civilian court.

### *Standard of Review*

In examining whether a dismissal for want of jurisdiction is appropriate, we Aconstrue the pleadings in favor of the plaintiff and look to the pleader=s intent.@ *See Texas Ass=n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We are obliged to take as true the allegations in Burkett=s petition and construe them favorably to his position. *See id.* We must reverse the dismissal unless the petition affirmatively demonstrates that no cause of action exists or that the plaintiff=s recovery is barred. *See Dorchester Master Ltd. P=ship v. Dorchester*, 914 S.W.2d 696, 703 (Tex. App.CCorpus Christi 1996, writ granted w.r.m.); *Ramirez v. Lyford Consol. I. S. D.*, 900 S.W.2d 902, 906 (Tex. App.CCorpus Christi 1995, no writ). A court is without jurisdiction only when the court can determine from the allegations of a pleading that, even by amendment, no cause of action can be stated consistent with the facts alleged. *Ramirez*, 900 S.W.2d at 906 (citing *Bybee v. Fireman=s Fund Ins. Co.*, 331 S.W.2d 910, 917 (Tex. 1960)).

***Justiciability of National Guard Disputes***

Burkett=s petition alleged that the appellees failed to abide by National Guard regulations, that is, they failed to confirm Burkett=s duty status to the Dyess military medical facility, and, as a result, Burkett suffered damages. Burkett alleged that despite the fact that at all times appellees were National Guard officers and the act about which he complains is governed solely by National Guard regulations, the appellees= alleged actions or failure to act regarding particular regulations took them outside their status as National Guard officers making appellees subject to the jurisdiction of civilian courts. We disagree.

Because National Guard members serve in a branch of the federal military service, decisions regarding the regular military service are relevant in determining the proper scope of judicial inquiry into claims brought by Guard members. *Holdiness v. Stroud*, 808 F.2d 417, 422 (5th Cir. 1987). We are mindful of the well-established principle announced in *Feres v. United States*, that claims brought by military personnel for injuries arising from or in the course of activity incident to military service are nonjusticiable. 340 U.S. at 136; *see also United States v. Stanley*, 483 U.S. 669, 683-84 (1987); *Chappell v. Wallace*, 462 U.S. 296, 305 (1983); *Holdiness*, 808 F.2d at 423; *Crawford v. Texas Army Nat=l Guard*, 794 F.2d 1034, 1035 (5th Cir. 1986); *Texas Adjutant Gen.=s Dep=t v. Amos*, 54 S.W.3d 74, 79 (Tex. App.CAustin 2001, pet. denied); *Newth*, 883 S.W.2d at 357. While the Supreme Court has not held that military personnel are barred from all redress in civilian courts for wrongs suffered in the course of military service, the Aspecial relationships that define military life have >supported the military establishment=s broad power to deal with its own personnel=@ instead of involving civilian courts in such decisions. *Chappell*, 462 U.S. at 305. AThe permissible range of lawsuits by present or former servicemen against their superior officers is, at the very least, narrowly

5

circumscribed.@ *Crawford*, 794 F.2d at 1035. ACivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the Military Establishment.@ *Chappell*, 462 U.S. at 300.

Burkett contends that these cases do not apply because here the appellees were not operating in an area where they could exercise discretion and there was nothing to second-guess. Burkett contends that based upon the Texas Army National Guard regulation procedure 7-3, the appellees were under a mandatory duty to confirm his duty status to the medical facility at Dyess and they deliberately failed to discharge that nondiscretionary duty.

Burkett suggests that the facts here are analogous to those in *Brown v. United States*, 739 F.2d 362 (8th Cir. 1984), *Day v. Massachusetts Air National Guard*, 167 F.3d 678 (1st Cir. 1999), and *Lutz v. Secretary of the Air Force*, 944 F.2d 1477 (9th Cir. 1999). In *Brown*, the plaintiff serviceman alleged he suffered injuries from a mock lynching; in *Day*, the plaintiff serviceman alleged he suffered injuries from a hazing incident described by the trial court as Adespicable@; in *Lutz*, the plaintiff servicewoman alleged she suffered injuries when the defendants broke into her office, took personal papers and disseminated them to other military personnel with the intent to injure her reputation and career. *Brown*, 739 F.2d at 364; *Day*, 167 F.3d at 680; *Lutz*, 944 F.2d at 1478. In these three cases, the courts reviewed the plaintiffs= allegations under *Feres* and concluded that the plaintiffs= claims for injuries arose from situations that were not within the course of activity incident to military service. Due to the Aextreme nature of the alleged conduct and its total antipathy to any conceivable military purpose,@ there was no relevant relationship among the activity, injury and military service. *Brown*, 739 F.2d at 368.

Conversely, here the issue is whether Burkett=s superior officers properly followed a Texas Army National Guard regulation related to a request for medical care at a military medical facility. Despite the fact that Burkett sued appellees in their individual capacities only, his pleadings complain about his superior officers= conduct in relation to a military personnel action pursuant to military regulations which can only arise when Texas Army National Guard officers are on active duty. Burkett=s pleadings alleged wrongdoing that was within the course of activity incident to military service. We hold that Burkett failed to allege an adequate basis for civilian court jurisdiction and his claims are not justiciable in a civilian court.

**Conclusion**

We overrule Burkett=s contention and affirm the trial court=s order of dismissal.[2]

David Puryear, Justice

Before Chief Justice Aboussie, Justices B. A. Smith and Puryear

Affirmed

Filed: August 8, 2002

Do Not Publish

---

[2] Having determined that the trial court did not err in dismissing the case, we need not address Burkett=s contention relating to statutory immunity as that issue is not necessary to the disposition of this appeal. *See* Tex. R. App. P. 47.1.